In the Matter of EDWIN FISHEL TUCCIO et al., Appellants, v CENTRAL PINE BARRENS JOINT PLANNING AND POLICY COMMISSION et al., Respondents. [888 NYS2d 562]—

In a proceeding pursuant to CPLR article 78 to review a determination of the Central Pine Barrens Joint Planning and Policy Commission dated June 20, 2007, which affirmed a determination of the Pine Barrens Credit Clearinghouse that no Pine Barrens Credits may be allocated to the petitioners' real property, and in the nature of mandamus to compel the Central Pine Barrens Joint Planning and Policy Commission to allocate 50.419 Pine Barrens Credits to that property, the petitioners appeal from a judgment of the Supreme Court, Suffolk County (Pines, J.), dated January 16, 2008, as corrected January 25, 2008, which denied the petition and, in effect, dismissed the proceeding.

Ordered that the judgment, as corrected, is modified, on the law, by deleting the provision thereof denying that branch of the petition which was to annul the determination of the Central Pine Barrens Joint Planning and Policy Commission that no Pine Barrens Credits may be allocated to the petitioners' real property and substituting therefor a provision granting that branch of the petition; as so modified, the judgment is affirmed, without costs or disbursements, and the matter is remitted to the Central Pine Barrens Joint Planning and Policy Commission to determine the proper number of Pine Barrens Credits that are to be allocated to the subject property.

On June 28, 1995, pursuant to the power granted to it by the Long Island Pine Barrens Protection Act (hereinafter the Act) (*see* ECL 57-0103 *et seq.*), the Central Pine Barrens Joint Planning and Policy Commission (hereinafter the Commission) adopted the Central Pine Barrens Comprehensive Land Use Plan (hereinafter the Plan) (*see* http://pb.state.ny.us/cpb_plan/vol1.pdf; http://www.nycourts.gov/reporter/webdocs/cpb.pdf). The Plan established the Pine Barrens Credit Program, the primary purpose of which is "to maintain value in lands designated for preservation or protection under the Plan by providing for the allocation and use of Pine Barrens Credits" (Plan § 6.1).

The Pine Barrens Credit Program, inter alia, provides for the allocation of Pine Barrens Credits—transferable development rights—to owners of property located in the "core preservation area," an area of the "Central Pine Barrens" in which "development" generally is prohibited by the Act (*see* ECL 57-0107 [10], [11], [13]; 57-0121 [3] [c]), in exchange for the placement of a permanent conservation easement on the property (*see* Plan § 6.7.2). The holder of Pine Barrens Credits may then redeem, sell, or transfer the Pine Barrens Credits, as provided for in the Plan (*see* Plan §§ 6.4, 6.5).

The Plan established the Pine Barrens Credit Clearinghouse (hereinafter the Clearinghouse), which is charged, among other things, with determining the number of Pine Barrens Credits to which an owner of a particular parcel of land is entitled (*see* Plan §§ 6.6, 6.7.1; *see also* Plan § 6.2). An owner seeking Pine Barrens Credits must request from the Clearinghouse a "Letter of Interpretation," after which the Clearinghouse "may conduct an analysis of the property and will allocate Pine Barrens Credits based upon the allocation formula and any unique features of a particular parcel of land" (Plan §§ 6.7.3.1, 6.7.3.2).

Thereafter, the Clearinghouse must mail the letter of interpretation to the property owner, who may then appeal the allocation to the Commission (*see* Plan §§ 6.7.3.2, 6.7.3.3). The

Commission is empowered to "confirm, increase, or decrease the allocation to be received from the Clearinghouse" (Plan § 6.7.3.4).

The Plan provides that, "[f]or the purpose of computing the allocations of Pine Barrens Credits, a parcel of land is defined as a separately assessed tax lot" (Plan § 6.3). The Plan contains various provisions to be used in determining the number of Pine Barrens Credits to be allocated for a particular parcel of land (*see e.g.* Plan §§ 6.3.1, 6.3.1.1, 6.3.2, 6.3.3, 6.7.6.6, 6.7.6.7).

As relevant to this appeal, pursuant to the power granted to it by the Plan, on August 7, 1996, the Commission adopted a non-residential property allocation formula providing, inter alia, that property zoned as "Light Industrial 200 District" is entitled to one Pine Barrens Credit per acre (*see* Plan § 6.3.2; *see also* Code of Town of Southampton [hereinafter Town Code] § 330-37). However, the Plan itself sets forth various limitations on allocation of Pine Barrens Credits (*see* Plan § 6.3.3), including that "[p]artially improved parcels shall receive a decreased allocation based upon the extent of the improvement [and] there shall be a proportional decrease in allocation based upon the receipt of all discretionary permits for improvement of a parcel" (Plan § 6.3.3.4). The Plan expressly provides that "[n]o fewer than 0.10 (one tenth) Pine Barrens Credit shall be allocated by the Clearinghouse or the Commission for any parcel of land" (Plan § 6.7.6.7).

In the 1980s the petitioners inherited from their grandparents a 403.5-acre parcel of land located in the Town of Southampton. The entire 403.5 acres of land is situated in the Central Pine Barrens and, more particularly, within the core preservation area.

In 1986 the Nature Conservancy purchased from the petitioners 275 of the 403.5 acres of land for the sum of $2,750,000. Subsequently, 75 of the remaining 128.5 acres of land were the subject of a "bar claim" action, which the parties thereto resolved by the placement of a conservation easement on 50 of those 75 acres. In exchange for the placement of the conservation easement on those 50 acres of land, the Commission allocated 50 Pine Barrens Credits to the various title holders of those acres, including 27 Pine Barrens Credits to the petitioners. Thereafter, the petitioners sold their 27 Pine Barrens Credits for the sum of approximately $1,600,000. The remaining 52.299 acres of the original 403.5-acre parcel of land are the subject of the instant proceeding.

In the 1950s the United States Army constructed buildings on approximately 0.98 acres of the 52.299-acre parcel of land

(hereinafter the Property). In or around 1994 the petitioners applied for and received from the Commission a Core Preservation Area Hardship Exemption, permitting them to construct two storage buildings situated on existing berms on the Property. Thereafter, in or around 1997, the petitioners applied for and received from the Commission a second Core Preservation Area Hardship Exemption, permitting them to construct four additional storage buildings, totaling 24,000 square feet, on the Property. Presently, the buildings on the Property cover 1.88 acres, and are used as self-service storage facilities. The Property is located within a "Light Industrial 200 District" (*see* Town Code § 330-37).

In or around 2006 the petitioners applied to the Clearinghouse for a letter of interpretation with respect to the Property. The Clearinghouse "determined that value has been maintained in the [Property]," noting that "[t]he [Property] is devoted to a commercial enterprise which has been expanded via Commission granted hardship exemptions," and that "an analysis of the aerial [and surveyor's] calculations indicates that the site is near the Town's development limits as contained in the . . . [Town] Code." Based on the foregoing, on or about January 3, 2007, the Clearinghouse issued a letter of interpretation, informing the petitioners "that no Pine Barrens Credits can be allocated to the [Property]."

On or about January 11, 2007 the petitioners appealed to the Commission from the determination of the Clearinghouse. On April 18, 2007 the Commission conducted a public hearing with respect to the petitioners' appeal. In a determination dated June 20, 2007, the Commission affirmed the determination of the Clearinghouse that no Pine Barrens Credits could be allocated to the Property.

Thereafter, the petitioners commenced the instant proceeding against the Commission and the Clearinghouse to annul the Commission's determination to compel the Commission to allocate 50.42 Pine Barrens Credits to the property. The Supreme Court denied the petition on the merits and, in effect, dismissed the proceeding. We modify.

Judicial review of the Commission's determination, which was made after a public hearing, as opposed to a quasi-judicial evidentiary hearing, is limited to "whether the determination was affected by an error of law, or was arbitrary and capricious or an abuse of discretion, or was irrational" (*Matter of Zupa v Board of Trustees of Town of Southold,* 54 AD3d 957, 958 [2008], citing CPLR 7803 [3]; *Matter of Halperin v City of New Rochelle,* 24 AD3d 768, 770 [2005]; *see generally* ECL 57-0135).

The Commission's determination was affected by an error of law, arbitrary and capricious, an abuse of discretion, and irrational to the extent that it was based on a finding that value has been maintained in the Property, and in the larger of the petitioners' other holdings, based on "the combination of acquisitions, hardships, allocation of Pine Barrens Credits, and the use, in part, of the Pine Barrens Credit Program to resolve title problems associated with a 75 acre portion of the [petitioners'] holdings." The Plan expressly provides that "[f]or the purpose of computing the allocation of Pine Barrens Credits, a parcel of land is defined as a separately assessed tax lot" (Plan § 6.3). The Property, however, is a separately-assessed tax lot distinct from the petitioners' other holdings, past and present, in the Central Pine Barrens. Thus, the Commission could not properly rely on the benefits that the petitioners derived under the Plan from those other holdings as a basis for affirming the determination of the Clearinghouse that no Pine Barrens Credit could be allocated to the Property.

Moreover, the Commission's determination was affected by an error of law, arbitrary and capricious, an abuse of discretion, and irrational to the extent that it was based on a finding that value has been maintained in the Property "in light of the number of buildings constructed on the Property pursuant to hardship exemptions and the continuing use of the facility." The Commission's finding in that regard ignores the fact that, absent the adoption of the Act, the petitioners could have developed and used approximately 7.16 additional acres on the Property (see Town Code §§ 330-37, 330-38). Thus, the value of the Property decreased with the passage of the Act. Therefore, absent the issuance of Pine Barrens Credits for the undeveloped portion of the Property, the value in the Property has not been maintained.

Furthermore, there is nothing in the Plan that prohibits the petitioners from seeking an allocation of Pine Barrens Credits for the undeveloped portion of the Property, notwithstanding the prior issuance of hardship exemptions to construct additional buildings on the Property and the continued use of the buildings on the Property, some of which predate the Act. In fact, the Plan expressly provides that "[p]artially improved parcels shall receive a decreased allocation *based upon the extent of the improvement* [and that] there shall be a *proportional decrease* in allocation based upon the receipt of all discretional permits for improvement of a parcel" (Plan § 6.3.3.4 [emphasis added]).

Contrary to the respondents' contention, the foregoing sec-

tions of the Plan clearly reflect that the receipt of discretionary permits for improvement of a parcel of land and/or the continued use of improvements on a parcel of land cannot completely displace the right to the allocation of any and all Pines Barrens Credits. Significantly, the Plan specifically provides, without qualification, that "[n]o fewer than 0.10 (one tenth) Pine Barrens Credits shall be allocated by the Clearinghouse or the Commission for any [qualifying] parcel or land," with stated exceptions not relevant to the instant appeal (Plan § 6.7.6.7; *see* Plan §§ 6.3.3.1, 6.3.3.2, 6.3.3.3).

Here, the Commission ignored the plain language of Plan §§ 6.3.3.4 and 6.7.6.7. Clearly, the Property is partially, rather than fully, improved. Thus, the petitioners are entitled at least to some allocation of Pine Barrens Credits, albeit less than that to which they would have been entitled absent any improvements on the Property, and absent their receipt of the discretionary permits for additional improvement of the Property. In that regard, the Commission's determination also was affected by an error of law, arbitrary and capricious, an abuse of discretion, and irrational to the extent that it was based on a finding that "the Clearinghouse's determination that no Pine Barrens Credits may be allocated to the Property is rationally based on the extent of improvement at the Property."

Finally, the Commission's determination was arbitrary and capricious, an abuse of discretion, and irrational to the extent that it was based on a finding that "the implementation of the . . . Act . . . has not prevented the reasonable use of the Property," since the petitioners were prevented by the Act from developing approximately 7.16 additional acres on the Property (*see* Town Code §§ 330-37, 330-38).

Accordingly, the Supreme Court should have granted that branch of the petition which was to annul the Commission's determination affirming the determination of the Clearinghouse that no Pine Barrens Credits could be allocated to the Property, since the Commission's determination was affected by errors of law, arbitrary and capricious, an abuse of discretion, and irrational (*see* CPLR 7803 [3]).

However, the Supreme Court properly declined to compel the Commission to allocate 50.42 Pine Barrens Credits to the Property. "[T]he extraordinary remedy of mandamus will lie only to compel the performance of a ministerial act, *and only when there exists a clear legal right to the relief sought*" (*Matter of Best v Queens County Supreme Ct.*, 54 AD3d 438, 439 [2008] [emphasis added]).

Here, although the petitioners' property is entitled to some

allocation of Pine Barrens Credits in accordance with the Plan upon remittal to the Commission, the petitioners failed to demonstrate a clear legal right to an allocation of 50.42 Pine Barrens Credits. Notably, inter alia, such an allocation fails to account for the fact that only 20% of the Property could have been developed under the Town Code absent the adoption of the Act (*see* Town Code §§ 330-37, 330-38; *see generally* Plan § 6.3.1.1). Accordingly, the matter must be remitted to the Commission to determine the proper number of Pine Barrens Credits that are to be allocated to the Property. Mastro, J.P., Miller, Angiolillo and Austin, JJ., concur.